UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**BENITA A.,**

**Plaintiff,**

     **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-0006-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on November 5, 2021, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 10).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four**.**

### I.  BACKGROUND

    On March 19, 2019, Plaintiff filed her applications for benefits, alleging disability since January 1, 2003. That application were denied initially and on reconsideration.  An Administrative Law Judge then held hearing on September 14 and December 8, 2020.  Plaintiff and a vocational expert, Dr. Andrea Thomas, testified at that hearing.

    The ALJ issued an unfavorable decision on February 3, 2021.  He found, first, that Plaintiff had not engaged in substantial gainful activity since her application date and that she had severe impairments including anxiety disorder NOS with panic attacks, depressive disorder NOS, and alcohol use disorder.  He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ determined that Plaintiff was able to perform a full range of work at all exertional levels.  However, she had nonexertional limitations including not being able to work at unprotected heights or around dangerous machinery, tools or chemicals.  Also, she was restricted to performing simple, repetitive tasks and could not do work which involved multiple simultaneous goals or objectives or the need to independently set quality, quantity, or method standards.  After finding that Plaintiff had no past relevant work, the ALJ, relying on testimony from the vocational expert,

determined that Plaintiff could perform medium jobs such as dishwasher, and counter supply worker. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises three issues, stated here *verbatim*:

> 1. The ALJ did not properly develop this record, because the record contains no treatment notes from individual therapy at Baker Victory for the year preceding her hearing.
>
> 2. Despite purporting to find Dr. Fabiano's opinion persuasive and stating that he incorporated the limitations into the RFC, the ALJ obviously did not do so.
>
> 3. The ALJ erroneously failed to articulate the persuasiveness he assigned to the state agency review opinions.

Plaintiff's memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

It does not appear that any testimony was taken at the initial administrative hearing. At the second, Plaintiff, who was 48 years old at that time, first testified that she was unable to work because the weather would sometimes cause her to have panic attacks. She said she took medication for anxiety and to help her sleep, and the medication caused side effects like dizziness and lack of focus. She did not believe that she could maintain full-time work because of her illness. Plaintiff further said that she was in treatment at Baker Victory and went to individual therapy sessions. She experienced difficulty being around people as well.

When asked about daily activities, Plaintiff said that she could prepare meals for herself and her daughter and could do grocery shopping if a neighbor accompanied her. Her neighbor also did her laundry for her. On most days, she stayed in bed and read. She said she had worked back in 2002 but lost that job due to a plant closing.

The vocational expert, Dr. Thomas, was asked questions about a person with Plaintiff's vocational profile who could work at all exertional levels but who needed to avoid certain workplace hazards and who could do only simple repetitive tasks. She said that such a person could do jobs like dishwasher and counter supply worker, both of which were unskilled and performed at the medium exertional level. She also gave numbers for those jobs as they existed in the national economy. Dr. Thomas also

testified that being absent from work more than one day per month would preclude competitive employment, as would being off task more than 10% of the time.

### B. Medical Evidence

The relevant medical records show the following. As early as 2014, Plaintiff had been diagnosed with depressive and anxiety disorders. She was taking medication for those conditions. In 2018 she was apparently linked with services to address her impairments but never followed through due to distance from her home. In 2019, Dr. Reed agreed to link her to more available resources but declined to prescribe Valium, which Plaintiff had requested and which she had received during an emergency room visit the prior year, noting that it was not an appropriate medication for her disorders. Notes also indicate a history of Plaintiff's participation in both individual and group counseling at Spectrum Human Services, but she was discharged by that provider in 2018 because she had stopped engaging in treatment services. Those notes also show a diagnosis of PTSD and moderate alcohol abuse.

Plaintiff completed the assessment process at Baker Victory Services outpatient clinic in 2019 and was deemed eligible for outpatient services. In the initial psychiatric assessment, she described a life-long history of depression and anxiety as well as symptoms of PTSD. It was recommended that she see a psychiatrist but there are no notes from any such appointment, nor any treatment notes from that source.

### C. Opinion Evidence

Plaintiff saw Dr. Fabiano for a consultative psychiatric evaluation on June 17, 2019. She said that she was currently living with her daughter and her 2-year-old grandson and that she had sporadic employment in a food pantry. Plaintiff described her mental health symptoms as difficulty sleeping, loss of appetite, and anxiety, but she denied any depressive symptoms. She also had a phobic response to being in crowds and said she had short-term memory deficits. On examination, her speech and thought processes were coherent and her affect was full. Dr. Fabiano noted that Plaintiff's attention and concentration were impaired due to low effort, as were her recent and remote memory skills. He concluded that she was mildly impaired in her ability to deal with simple directions and instructions and moderately impaired with respect to complex directions and instructions. She also had a moderate impairment in her ability to deal with others, to sustain concentration, to regulate her emotions, and to maintain well being. Dr. Fabiano attributed her difficulties to "a lack of motivation and anxiety" and concluded that her psychiatric problems did "not appear to be significant enough to interfere with [her] ability to function on a daily basis." (Tr. 598-602). A physical examination done the same day by Dr. Dave indicated only one restriction, namely avoiding ladders and heights due to psychosomatic symptoms. (Tr. 603-06).

Drs. Koenig and Brauer, state agency reviewers, examined the records up through

June and October, 2019, respectively. Both of them concluded that Plaintiff did not have any severe physical impairments, although Dr. Koenig would have limited Plaintiff to medium work. Drs. Juriga and Dekeon also reviewed the mental health records and found that Plaintiff could do simple work with low contact and that she had a number of moderate mental limitations in the areas covered by the "B" criteria of the Listing of Impairments.

Dr. Reed, Plaintiff's treating physician, filled out a form in October of 2020. On it, Dr. Reed stated that Plaintiff was moderately impaired in her ability to maintain attention and concentration, to maintain appropriate behavior, and to interact appropriately with others. Someone - it is not clear whether it was Dr. Reed or not - concluded on the basis of Dr. Reed's report that Plaintiff was exempt from participating in temporary assistance work activities due to her medical issues. (Tr. 726-28).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

### A. Duty to Develop the Record

In her first claim of error, Plaintiff notes that she began treatment at Baker Victory in July of 2019 and was still being seen there at the time of the hearing, attending counseling sessions on a regular basis. She correctly points out that none of the Baker Victory treatment notes have been made a part of the record, and argues that this is an obvious gap in the record which the ALJ was required to fill. Plaintiff says this duty is highlighted by the fact that the ALJ relied on the absence of any evidence from Baker Victory that she had significant functional impairments. In response, the Commissioner asserts that two attempts were made to obtain these records and that it was unnecessary for further efforts to be pursued, and also argues that it was Plaintiff who both should have done more to supplement the record (such as request the issuance of a subpoena) and that her counsel never requested that the treatment notes be obtained.

The first question to be asked is what the record reflects about the efforts made to obtain these particular records. At the hearing, Plaintiff's counsel represented that the record was complete except for "a treating source statement from Baker Victory Counseling...." (Tr. 39). When asked if that record actually existed, however, counsel responded that it did not. *Id*. There is nothing before the Court suggesting that such a statement was ever prepared, so that matter is essentially moot. As far as the individual counseling records go, counsel did not ask the ALJ to obtain them, and stated at the end of the hearing, when asked if there was anything else for the record, "No, your honor. I'm all set." (Tr. 60). It does appear that records from Baker Victory through September 19, 2019, which presumably would have included some treatment notes, were requested at the reconsideration level (Tr. 84) but it appears that the only evidence received from that source is what Plaintiff herself supplied. *See* Tr. 86 ("Clmt supplied evidence from Baker Victory Services"). There is no record, however, of any request having been made after that date for treatment records, and it can be inferred that more than a full year of such records were created between the date of the reconsideration level request and date of the administrative hearing (December 18, 2020). The question then becomes whether, given this set of facts, the ALJ had a further duty to attempt to obtain the records.

This Court has described the duty to develop the record in these terms:

> While plaintiff asserts that the ALJ breached his duty to develop the record fully by failing to obtain more information from plaintiff's treating physicians, ... "an ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision." *Walker v. Astrue,* 2012 U.S. Dist. LEXIS 138472 at *9 (W.D.N.Y.2012).

*Roman v. Colvin*, 278 F. Supp. 3d 671, 675 (W.D.N.Y. 2017). The type of "gaps in the record" which trigger the duty to develop the record further typically involve missing treating source records for the conditions which, if found to be sufficiently severe, would demonstrate disability. So, for example, if a full year's worth of treatment notes for a

mental health condition are missing from the record, and such notes "likely contained information relevant to the ALJ's evaluation" of the disability claim, a remand for further development of the record is warranted. *See Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 425 (W.D.N.Y. 2019).

The Commissioner's memorandum makes much of the fact that counsel took no apparent steps to obtain these records or even ask the ALJ to do so, and that one earlier request for some of these records (although not, apparently, any records created between September of 2019 and December of 2020) was not honored. However, as this Court has also said,

> The fact that the essential treatment records were requested, but not received, "does not obviate the ALJ's independent duty to develop the record," particularly since the ALJ could have exercised his power to subpoena them, but did not.

*Harris o/b/o N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018), *quoting Benjamin v. Colvin*, 2017 WL 4402445, at *8, 2017 U.S. Dist. LEXIS 161772 at *21–*22 (E.D.N.Y. 2017). The Court is sympathetic to the argument that counsel failed to signal to the ALJ that these records were essential, but it is ultimately the ALJ's duty, not counsel's, to insure that the record is sufficiently complete to make a reasoned decision. That duty was particularly evident here when all of the missing records post-date the expert opinions and all relate to Plaintiff's mental impairments, and where the ALJ relied at least in part on the fact that "Baker Victory Services records do not indicate the claimant has an inability to work due to anxiety/panic attacks or any other mental impairment" and the observation that "I did not see any evidence of anti-social or bizarre behavior in the medical record ...." (Tr. 26). The missing records will, at the very least, shed light on whether these observations are accurate, and may assist the ALJ in formulating a more accurate mental residual functional capacity finding. Remand is therefore required.

B. Other Issues

Plaintiff's other two claims focus on the ALJ's evaluation of the expert opinions, including the fact that he stated that he found Dr. Fabiano's opinion persuasive but then did not incorporate all of the limitations imposed by that opinion into the residual functional capacity finding, and the fact that he did not indicate how persuasive he found the state agency reviewers' opinions as to mental functioning to be. While the Court need not address these issues in light of the remand being ordered, there is an indication in all of these opinions that Plaintiff should have "low contact" or was moderately limited in her ability to deal with others. The ALJ implicitly rejected those conclusions but there is little explanation as to his reasoning for doing so. That is another issue which would benefit from further exploration on remand.

V. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 10), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**